IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAMELA J. SMITH

v.

UNIVERSITY OF MARYLAND,
BALTIMORE,

JOHN JENSEN,

GLOSENDA NAVALES

Civil No. CCB-17-3664

## MEMORANDUM

This is an employment discrimination case. Pamela J. Smith alleges that while she was employed as an accountant by the University of Maryland, Baltimore, she was subjected to discrimination on the basis of her race and subsequent retaliation for reporting such discrimination to her department director and to the University's human resources department. (Pl.'s Second Am. Compl. ("SAC"), ECF No. 7.) Ms. Smith filed suit under 42 U.S.C. § 2000e, *et, seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1983, (SAC ¶¶ 48-49, ECF No. 7), but has since abandoned her Title VII and § 1983 claims, conceding their untimeliness. (Pl's Mem. in Opp'n to Defs' Mot. to Dismiss, ECF No. 20-1 at p. 4.)[1] The remaining live issue, therefore, is the defendants' motion to dismiss the plaintiff's race discrimination and retaliation claims brought

---

[1] All citations will refer to the ECF pagination.

1

under 42 U.S.C. § 1981. Because Ms. Smith's § 1981 claims are also time-barred, the motion will be granted.[2]

**BACKGROUND**

Pamela J. Smith began her tenure as an accountant with the University of Maryland, Baltimore (the "University") in March, 2008. (SAC ¶ 8.)[3] Her work with the University started successfully. (SAC ¶¶ 12-18.) She was given increasing authority and leadership responsibilities in the workplace. (SAC ¶¶ 15-18.) Ms. Smith requested that her pay and title be reevaluated in light of her additional duties. (SAC ¶ 19.) Her request was denied. (SAC ¶ 20.) Ms. Smith is African American, and, in 2011, she and other African American employees filed complaints against their supervisor, defendant Glosenda Navales (who is of Asian descent), contending that she created a hostile workplace for African Americans. (SAC ¶ 21.) These complaints also were shared with Ms. Navales's supervisor, defendant John Jensen (who is white), and the University's human resources department. (SAC ¶¶ 23-25.) After the complaints were filed, Ms. Smith alleges, she started to receive poor job-performance feedback and undue disciplinary warnings, and she and other African American employees who came forward with grievances involving race discrimination were then excluded from staff meetings. (SAC ¶¶ 29, 32-33.) Ms. Smith filed a complaint with the EEOC on October 6, 2011. (SAC ¶ 34.) Shortly thereafter, she was placed on a Performance Improvement Plan at work, which was renewed, at monthly intervals, for over a year and a half until her termination. (SAC ¶¶ 35-36, 41-42.) On December

---

[2] Because Ms. Smith's claims are time-barred, the court does not reach the collateral estoppel issue. It does note, however, that Administrative Law Judge Gresock found Ms. Smith's termination was based on incompetency, a finding that was upheld by the Baltimore City Circuit Court.

[3] For purposes of this motion to dismiss, the facts pleaded are assumed to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009).

2

9, 2013, Ms. Smith was terminated from her employment by the University. (SAC ¶ 44.)

On December 11, 2017, Ms. Smith filed a *pro se* action against the University under both Title VII and § 1981. (Compl., ECF No. 1 at p. 4.) She amended that complaint to add Mr. Jensen and Ms. Navales as defendants the following day. (Am. Compl., ECF No. 2.) On February 26, 2017, Ms. Smith filed a second amended complaint—this time through counsel—which, among other changes, added a claim under § 1983. Ms. Smith has now abandoned her Title VII and § 1983 claims, conceding that they were untimely. She maintains, however, that her claims under § 1981 remain viable.

## ANALYSIS

### I. Standard of Review

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). And the plaintiff typically must do so by relying solely on facts asserted within the four corners of his complaint. *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015). While the inquiry is homed on the sufficiency of the complaint, in "relatively rare circumstances where

facts sufficient to rule on an affirmative defense are alleged in the complaint, [an affirmative] defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

## II. Discussion

There is much on which the parties here agree. First, Ms. Smith and the defendants agree that § 1981 suits postdating the Civil Rights Act of 1991 are subject to the general four-year statute of limitations under 28 U.S.C. § 1658. (Pl's Mem. in Opp'n to Defs' Mot. to Dismiss, ECF No. 20-1 at p. 5-6; Mem. in Supp. of Defs' Mot. to Dismiss, ECF No. 12-1 at p. 8.) Instead, the subject of this dispute is the timing of her claim's accrual. Next, the parties agree that claims pertaining to discriminatory termination, when brought under federal civil rights legislation, accrue, as a general matter, "on the date the decision to terminate employment was made and communicated to the employee—not the date the employment was actually terminated." (*See* Pl's Mem. in Opp'n to Defs' Mot. to Dismiss, ECF No. 20-1 at p. 6 (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981).) The plaintiff also appears to accept that this accrual rule applied to § 1981 actions before amendments to that statute were enacted as part of the Civil Rights Act of 1991. (Pl's Mem. in Opp'n to Defs' Mot. to Dismiss, ECF No. 20-1 at p. 6). The crux of the present matter, by contrast, is Ms. Smith's contention that the 1991 amendments to § 1981 transformed the statute from an anti-discrimination cause of action into a breach of contract right, such that her claims would accrue, pursuant to Maryland contract law, upon her employment contract's termination.

In 1980, the Supreme Court held, in a case involving a professor's denial of tenure, that "[i]n order for the limitations periods to commence with the date of discharge," the plaintiff

4

would have to show that the termination itself "differed discriminatorily" from the decision to deny the plaintiff tenure. *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). "[T]he proper focus," the Court reasoned, "is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became most painful." *Id.* (noting that, in that case, the "only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to Ricks. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later.") (emphasis preserved). One year later, in *Chardon*, where a direct termination of employment was at issue, instead of a denial of tenure, the Court harkened back to *Ricks*, reiterating that "'mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.'" *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (quoting *Ricks*, 449 U.S. at 257). The *Chardon* Court continued, "[i]n the cases at bar, respondents were notified, when they received their letters, that a final decision had been made to terminate their appointments. The fact that they were afforded reasonable notice cannot extend the period within which suit must be filed." *Id.*

Calculating the date Ms. Smith's claims accrued in this case, under the rule announced in *Ricks* and *Chardon,* is straightforward. Ms. Smith received a letter from the defendants on November 8, 2013, stating that her employment with the University would be terminated. The termination took effect on December 9, 2013. (SAC ¶ 44; Pl's Mem. in Opp'n to Defs' Mot. to Dismiss, ECF No. 20-1 at p. 8.) She does not allege that any discrete discriminatory act occurred after the date she received notice of her termination. The relevant discriminatory act was the University's decision to terminate Ms. Smith; her eventual departure was merely a consequence

5

of that discriminatory act. *See Ricks*, 449 U.S. at 258. Ms. Smith's claims accrued, therefore, under *Ricks* and *Chardon*, on November 8, 2013.

The plaintiff argues that *Ricks* and its progeny fail to appreciate the contractual nature of § 1981 claims and that, because § 1981 is a contract right, *contra* Title VII, she had no cause of action until the day her employment contract with the University was breached. *Id.* The discrimination and retaliation that occurred, she reasons, happened not when she received notice of her dismissal, but rather on the day she was terminated, when her contractual ties with the University were formally severed. *Id.* To hold for the plaintiff under this logic, however, would be to diametrically contravene the prescriptions of *Chardon* and *Ricks*, Supreme Court cases that ruled on this precise issue—and that Ms. Smith does not even attempt to distinguish. Instead, she relies on the 1991 amendments to §1981, enacted after *Chardon* and *Ricks*.

The 1991 amendments to § 1981, promulgated through the Civil Rights Act of 1991, constituted the largest alteration to the Reconstruction-era statute. As Justice Stevens opined in 2004:

> [t]he original version of the statute now codified at Rev. Stat. § 1977, 42 U.S.C. § 1981, was enacted as § 1 of the Civil Rights Act of 1866, 14 Stat. 27. It was amended in minor respects in 1870 and recodified in 1874, see *Runyon v. McCrary*, 427 U.S. 160, 168–169, n. 8, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), but its basic coverage did not change prior to 1991. As first enacted, § 1981 provided in relevant part that 'all persons [within the jurisdiction of the United States] shall have the same right, in every State and Territory . . . to make and enforce contracts . . . as is enjoyed by white citizens.' 14 Stat. 27. We held in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), that the statutory right 'to make and enforce contracts' did not protect against harassing conduct that occurred after the formation of the contract. . . . In 1991, however, Congress responded to *Patterson* by adding a new subsection to § 1981 that defines the term 'make and enforce contracts' to include the

> 'termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.' 42 U.S.C. § 1981(b).

*Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372-73 (2004). Thus, in effect, the 1991 amendments expanded the scope of § 1981 suits to include post-formation contract discrimination claims. *See also Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 877-78 (D. Md. 2012). And yet, when viewed in light of the statute's history, these additions did not recast § 1981 into a breach of contract right of action—§ 1981 has always pertained to contracts. Instead, these amendments simply broadened the field of contract-discrimination claims cognizable under the statute. Then and now, § 1981 has held the sole purpose of maintaining equal contract rights and prohibiting discrimination in the execution (and now performance) of contracts.

Cases that consider the timing of a § 1981 claim's accrual in the wake of the 1991 amendments uniformly adhere to the pre-1991 rule announced in *Ricks* and *Chardon*. *See, e.g., Wahi v. Charleston Area Med. Ctr.*, 453 F. Supp. 2d 942, 957-58 (S.D.W. Va. 2006), *aff'd sub nom. Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599 (4th Cir. 2009) ("Section 1981 claims for wrongful termination accrue on the date the employer notifies the employee that he is being terminated."); *Kornyo v. Gonzaga Coll. High Sch.*, 308 F. Supp. 3d 212, 217 (D.D.C. 2018) ("Plaintiff alleges that he was informed that his employment contract would not be renewed on April 30, 2013. . . .[therefore, absent an independently actionable subsequent discriminatory act or a hostile work environment claim] Plaintiff's Section 1981 race discrimination claim accrued no later than that date."); *Nghiem v. U.S. Dep't of Veterans Affairs*, 451 F. Supp. 2d 599, 604 (S.D.N.Y. 2006) ("Section 1981 claims for wrongful termination accrue on the date the employer notifies the employee that he is being terminated."). The

plaintiff cites no cases to support her innovative contract-right theory—she merely implores the court to timestamp the accrual of her claim as if it were a state law breach of contract claim.

In this case, the 1991 amendments do not salvage Ms. Smith's § 1981 claim because they do not alter the timing of the discriminatory acts at issue. While the 1991 amendments expanded a plaintiff's rights under § 1981 to include claims for post-formation discrimination—indeed, it is only because of the 1991 amendments that Ms. Smith can challenge her post-contract termination under §1981— the allegedly discriminatory act remains the triggering event for accrual. The fact that §1981 now covers the termination of contracts does not render Ms. Smith's last day, the date of the discriminatory act; rather, her termination remains the consequence of the University's allegedly discriminatory decision to terminate Ms. Smith, a decision that was made and communicated to Ms. Smith on November 8, 2013. Because this is the last discrete discriminatory act alleged, and because it occurred more than four years before Ms. Smith filed her first complaint, her claims remain untimely.

The allegations in the case, if accurate, are serious. Ms. Smith understandably seeks some redress. But more than four years transpired between the accrual of her claim and the filing of her first complaint. Ms. Smith does not assert any reason why the applicable statute of limitations should be waived, estopped, or equitably tolled. The timing of the alleged discriminatory act is the touchstone of the accrual analysis under *Ricks* and *Chardon* and remains so under subsequent persuasive case law. The 1991 amendments to § 1981 do not change this fact. Because Ms. Smith does not allege that a discriminatory act occurred in the four years preceding the filing of her complaint, her § 1981 claim is time-barred. The defendants' motion to dismiss will be granted.

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss Ms. Smith's remaining claims will be granted.

A separate order follows.

9/27/18
Date

CCB
Catherine C. Blake
United States District Judge